COMMONWEALTH EDISON COMPANY *et al.*, Plaintiffs-Appellees, *v.* COMMUNITY UNIT SCHOOL DISTRICT NO. 200, DU PAGE COUNTY, Defendant-Appellant.—COMMUNITY UNIT SCHOOL DISTRICT NO. 200, DU PAGE COUNTY, Plaintiff-Appellant, *v.* THE CITY OF WHEATON *et al.*, Defendants-Appellees.

Second District (1st Division)   Nos. 75-186, 187, 188 & 189 cons.

Opinion filed December 23, 1976.—Rehearing denied January 20, 1977.

Robert B. Bennorth, of Wheaton, for appellant.

James R. Bryant, Jr., Stephen J. Mattson and Robert A. Hellman, all of Mayer, Brown & Platt, and Isham, Lincoln & Beale, all of Chicago, and James E.

Gauger, of Rathje, Woodward, Dyer & Burt, and Robert V. Gildo, both of Wheaton, for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The City of Wheaton, in 1966, imposed a 3% privilege or occupation tax on the gross receipts of all persons engaged in the business of distributing, supplying or selling gas or electricity, or transmitting messages electrically, within the corporate limits of the City of Wheaton. The three utilities affected (Edison, Northern Illinois Gas, and Illinois Bell) passed the tax on to their customers in the form of additional charges. Two of their customers were school districts which paid such charges until 1972 when they merged into Community Unit School District No. 200. Since November of 1972, the unit district has refused to pay the additional charges, contending that the tax is unconstitutional as applied to it. In January 1974, rather than cutting off the district's service, the three utilities filed separate suits to recover the accumulated unpaid charges.

The school district answered and raised various defenses asserting the invalidity of the municipal ordinance and the enabling statute. The district also filed a petition to make the city a party to the debt actions which was denied by the trial court. The district then filed a separate declaratory judgment action against the city and the three utilities in which it made essentially the same contentions which it had raised in defense of the debt actions. In the declaratory judgment action the district claimed that the ordinance is unconstitutional because (1) the city, in taxing a school district, is taxing property outside its boundaries because taxpayers outside the city but inside the school district's boundaries must contribute to the payment of the tax; (2) the statute discriminated against this school district in comparison with those whose boundaries are wholly within a municipality; and (3) since the school district receives about 40% of its educational funds from the State, the city in effect is taxing the State to the extent that these funds are diverted from the purposes of education and paid to the city.

On the motion of the utilities the trial court struck the affirmative defenses and entered judgment for the utilities in the actions for the unpaid charges and also dismissed the declaratory judgment action. Grounds for the motions to strike the defenses in the debt action and to dismiss the declaratory judgment action were (1) that the district did not have standing to challenge the validity of the municipal utilities tax and (2) that the district had failed to exhaust its administrative remedies before the Illinois Commerce Commission. An alternative ground of the motion to dismiss was that the utilities were not proper parties defendant to the declaratory judgment action.

The appeals from the final judgments in the three debt actions and the

dismissal of the declaratory judgment suit were ordered consolidated for briefing and hearing on appeal. The district's contentions in this court are (1) it has standing to challenge the tax; and (2) the tax is invalid because it is an attempt to tax beyond the municipality's territorial limits, as well as an attempt to tax state funds.

Cities may levy a tax on telephone, gas and electric utilities based upon the gross receipts from the sales of their services or products within the corporate limits of the municipality. (See Ill. Rev. Stat. 1973, ch. 24, par. 8—11—2.) Utilities subject to the tax may, in turn, charge their customers, in addition to any rate authorized by the Public Utilities Act, an additional charge equal to the sum of (1) an amount equal to the municipal tax; (2) 3% of the tax to cover the costs of accounting; (3) an amount equal to the increase in taxes and other payments to government bodies resulting from the amount of the additional charge. While the utility must file with the Illinois Commerce Commission a copy of the ordinance and a supplemental schedule specifying such additional charge, the charge becomes effective upon filing and the commission only has the power to investigate whether or not the supplemental schedule correctly specifies such additional charge. None of the ordinary rate making procedures are applicable. If the commission finds that the supplemental schedule does not correctly specify such additional charge, it must order a refund of the excess with interest. See Ill. Rev. Stat. 1973, ch. 111 2/3, par. 36(a).

As required by statute, the tax as well as the fee for collection, is added to and shown as a separate item in the bills sent to the customer.

■■ Where an actual controversy exists, a declaratory judgment action is an appropriate method of obtaining an adjudication of the construction or validity of a statute or ordinance. (Ill. Rev. Stat. 1973, ch. 110, par. 57.1; see, *e.g., Schultz v. Village of Lisle,* 53 Ill. 2d 39 (1972); *East St. Louis v. Union Electric Co.,* 37 Ill. 2d 537 (1967).) Therefore, we first consider whether the school district had standing to challenge the constitutionality of the tax in its suit against the City of Wheaton for declaratory judgment. The city has not filed a brief but the utilities contend that the school district has no standing since it did not pay the tax but only an additional charge for services, citing *Agron v. Illinois Bell Telephone Co.,* 449 F.2d 906 (7th Cir. 1971), *cert. denied,* 405 U. S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1171 (1972). The school district contends that it is the taxpayer, since the utility was a mere conduit through which the tax (and the expenses of administration) are paid by the consumers, citing *East St. Louis v. Union Electric Co.,* 37 Ill. 2d 537 (1967), *cert. denied,* 390 U. S. 948, 19 L. Ed. 2d 1136, 88 S. Ct. 1034 (1968). Neither case, however, involved the issue whether the consumer under these circumstances may challenge the validity of the ordinance.

To challenge the constitutionality of a statute or an ordinance, the party

must be directly affected by the provision attacked. (*Winberry v. Hallihan,* 361 Ill. 121, 131 (1935); *Klein v. Department of Registration & Education,* 412 Ill. 75, 87, *cert. denied,* 344 U. S. 855, 97 L. Ed. 664, 73 S. Ct. 93 (1952); *Village of Itasca v. Luehring,* 4 Ill. 2d 426, 430 (1954).) But it is not always necessary that one challenging a tax as unconstitutional be the initial taxpayer. Thus it was held in *Marquardt Corp. v. Weber County,* 360 F.2d 168, 171 (10th Cir. 1966), that where the United States reimbursed certain contractors for taxes levied upon them by the State of Utah because it had agreed by contract to pay them a "cost-plus fixed fee" (including taxes), the United States, upon reimbursing the taxpayer pursuant to its contract, became the real party in interest with the right to assert the invalidity of the tax on the grounds of unconstitutional discrimination against the government and those with whom it deals. Similarly the Illinois Supreme Court in *Crane Construction Co. v. Symons Clamp & Manufacturing Co.,* 25 Ill. 2d 521 (1962), allowed a lessee to challenge the constitutionality of retailers' occupation tax although that tax was not levied upon it where the validity of the use tax the lessee paid to the vendor was dependent on the validity of the former tax, stating:

"In their reply brief, appellants contend that Crane has no standing to challenge the retailers' occupation tax, since that tax is not levied upon Crane but upon its vendors. Since this point was not raised in appellant's initial brief, it has been waived. We think, however, that the contention is without merit. If the retailers' occupation tax were alone involved, the point would be well taken. As applied to this case, however, the contention completely ignores the complementary and interlocking nature of the retailers' occupation tax and the use tax. Although the retailers' occupation tax is not laid on plaintiff, the use tax is. It pays use tax, however, not directly to the State, but to its suppliers, in this case Symons Clamp & Manufacturing Company. Symons collects use tax from Crane and remits retailers' occupation tax to the Department of Revenue. Crane obviously has standing to challenge the validity and applicability of the use tax and is not compelled to rely upon its lessor, Symons, to protect its interests. To the extent to which the validity of the use tax and its application to plaintiff is dependent upon the validity of the retailers' occupation tax, it may also challenge that tax. In this case, plaintiff has followed an appropriate method for litigating questions which it has a right to have determined." (25 Ill. 2d 521, 527-28.)

In the instant case, the school district, while not paying a tax to the utilities, pays an additional charge whose validity, like the tax paid in *Crane,* is dependent on the validity of the taxing ordinance. If the municipality cannot levy the tax, the utility cannot levy the additional

charge. The validity of the one depends on the validity of the other. Other taxes are treated as expenses which the Illinois Commerce Commission may consider in determining whether to allow a rate increase. Here the commission has no choice. If the tax is levied, the additional charge must be allowed.

The purpose of the doctrine of standing is merely to preclude persons having no interest in the controversy from bringing suit. (Davis, Administrative Law Treatise §22.00—4 (1970 Supp.).) It is not meant to preclude a valid controversy from being litigated. And where the person most directly affected actually has no interest in the controversy, the courts in recent years have been more liberal in allowing persons indirectly affected to bring suit. Here the utilities directly affected as the initial taxpayer can be said to have no real interest in the controversy since the charge is added to the users' bills. As pointed out by the Supreme Court in *East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967), *cert. denied*, 390 U. S. 948 (1968):

> "On a literal and superficial view it might appear as if the utility tax ordinance imposed a tax burden upon the Company, but on examination it is evident that the burden was placed on the consumers. The Company as authorized simply passed on the new charges to its consumers and the consumers not only paid such charges to the City but also paid the Company the expenses it incurred while serving as a collector or conduit of taxes from the consumers to the City."

■■ The court, of course, was not holding that the consumer thereby became the taxpayer. However, it is not necessary that a party must be the initial taxpayer in order to challenge the constitutionality of a tax. (See *Marquardt Corp. v. Weber County*, 360 F.2d 168 (10th Cir. 1966).) We therefore hold that the district has standing.

Since the question of the validity of the ordinance, although not properly raised by the motions to strike and dismiss below, has been argued by all parties, it will be considered on the record before us. We conclude that the tax imposed by Wheaton is constitutional.

■■ In general, districts which are State agencies may not be taxed by municipalities. (16 McQuillan, Municipal Corporations §44.56.) However, taxes passed on to exempt bodies in the form of higher prices are not necessarily invalid. See *United States v. Boyd*, 378 U. S. 39, 12 L. Ed. 2d 713, 84 S. Ct. 1518 (1964); *Marquardt Corp. v. Weber*, 360 F.2d 168, 171 (10th Cir. 1966); *First National Bank v. Jones*, 48 Ill. 2d 282 (1971).

■■ The school district argues that, since the burden of the tax is passed on to it, it is the "taxpayer," citing *East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537 (1967), *cert. denied*, 390 U. S. 948 (1968). It is clear that the incidence of the tax rests on the utilities, even if its burden does not,

since if the tax is not paid by the utility, it is the only one from whom the city may seek to collect. (See *Martin Oil Service Inc. v. Department of Revenue*, 49 Ill. 2d 260, 263 (1971).) "It is the legal incidence of the tax that controls." (*First National Bank v. Jones*, 48 Ill. 2d 282, 288 (1971); *National Bank v. Isaacs*, 27 Ill. 2d 205 (1963).) Accordingly, it is the utility not the school district which is the taxpayer. The fact that the utility, while not required to, may as a general practice pass the tax on to the purchaser does not change the character of the tax. (*First National Bank v. Jones*, 48 Ill. 2d 282.) Nor does the fact that the subscribers must inevitably provide the money for the payment of the tax through a special charge. As was stated by the Missouri Supreme Court in *State ex rel. West Plains v. Public Service Com.*, 310 S.W.2d 925, 934 (1958):

> "The argument is that appellants, pursuant to constitutional authority, levied an occupational tax against Western but that the commission, by its order, has converted the tax into one against the subscribers to the telephone service. The conclusion . is fallacious. The utility remains the party taxed and the utility still pays the tax—the only effect of the commission's order in that respect is to permit the utility to collect the money with which to pay the tax from the tax beneficiaries rather than from all subscribers. It must be apparent that a utility's subscribers will always provide the money for payment of all taxes—the utility has no other source of revenue—the only question is which subscribers should pay which tax."

We agree with the utilities that the opinion of the Federal Court of Appeals for the Seventh Circuit in *Agron v. Illinois Bell Telephone Co.*, 449 F.2d 906 (7th Cir. 1971), *cert. denied*, 405 U. S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1171 (1972), is persuasive. The plaintiffs in that case contended that the Federal excise tax on amounts paid for communication services computed on the total telephone bill, including the additional charge attributable to state and local message taxes, was improper. They argued that the additional charge was a tax imposed on subscribers and that the excise tax could not be assessed on a tax. The court ruled that under Illinois law the special charge was not a tax on the consumer, reasoning in part:

> "Agron first contends that as a matter of Illinois law, those state and local taxes which are separately stated on his telephone bill, while nominally imposed on IBT, are actually direct taxes on telephone subscribers * * *.
>
> The Illinois statutes authorizing and imposing a tax on the occupation or business of transmitting messages by means of electricity are explicit. Ill. Rev. Stat., ch. 120, §467.2 and ch. 24, §8—11—2 (1969). For instance, section 467.1 provides that:

'"Taxpayer" means a person engaged in the business of transmitting messages'; and section 467.2 states that: 'A tax is imposed upon persons engaged in the business of transmitting messages in the State.' It would be difficult to interpret such specific language as imposing a tax on telephone subscribers. It may be that IBT normally 'passes on' to its subscribers the economic burden of the state and local occupation taxes just as every unsubsidized business must 'pass on' and recover from its customers every item of operating expense—including state and federal taxes—if it is to operate profitably. But the fact that the telephone subscriber ultimately bears the financial burden of the tax does not justify our ignoring the clear language of the Illinois statutes and holding that the tax is 'imposed' on subscribers." *Agron,* 449 F.2d 906, 909.

■■ As the tax is levied upon the utilities and not on the school district, it is obvious that the district's contention that State funds are being taxed is without merit.

■■ The school district's contention that the ordinance has an unauthorized extraterritorial effect is likewise without merit. The ordinance, which follows the language of the statute, merely taxes the utilities' business in Wheaton. There is no tax on business of the utilities not within the city. The additional charge related to the city tax is made only to customers receiving utility service in buildings within the city limits. The fact that the school district receives tax revenues from persons outside the city is irrelevant because the municipal utilities tax is imposed upon the utilities not upon the school district. In a very broad sense, of course, any tax has extraterritorial effects. Price and competition are affected by the existence or nonexistence of taxes. Moreover, such an effect is not unauthorized; the extraterritorial effect here has clearly been approved by the legislature which both permitted the initial tax and its being passed on.

■■ In its reply brief the school district for the first time suggested that the utilities have attempted to charge the Wheaton utility tax on the use of utilities outside the City of Wheaton. This would raise a question of whether this is a violation of section 36(a) of "An Act Concerning Public Utilities" (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 36(a)) and whether the school district had been charged at an excessive rate. Such questions would be for the Illinois Commerce Commission and not, initially, for the court to decide. The commission has exclusive jurisdiction over complaints of excessive rates charged by public utilities and the courts have jurisdiction over these matters only upon administrative review of the decision of the commission, that is, only after utilization and exhaustion of the remedies available before the commission. (*Terminal R. R. Association v. Public Utilities Com.,* 304 Ill. 312 (1922); *Adler v.*

*Northern Illinois Gas Co.,* 57 Ill. App. 2d 210 (1965); *Cummings v. Commonwealth Edison Co.,* 64 Ill. App. 2d 320 (1966); *Malloy v. Illinois Bell Telephone Co.,* 12 Ill. App. 483 (1973).) The court cannot usurp the functions of the Illinois Commerce Commission and determine whether the utilities tax has been charged for uses outside of Wheaton or whether a reasonable rate has been charged. *Cummings v. Commonwealth Edison Co.,* 64 Ill. App. 2d 320 (1966).

Therefore, we find that the enabling statute and the municipal ordinance are constitutional as applied to the school district. In the view we have taken of the case, we find it is not necessary to rule, nor do we rule, on the propriety of the trial court's actions in striking the affirmative defenses and denying the petitions to make the city a party to the debt actions.

For the foregoing reasons, the judgments of the trial court are affirmed.

Affirmed.

GUILD, P. J., concurs.